**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Gustavo Rodriguez Alarcon,

      Petitioner

v.

Jason Knight, et al.,

      Respondents

Case No.: 2:26-cv-00691-JAD-BNW

**Order Granting Habeas Petition in Part**

[ECF No. 1]

Petitioner Gustavo Rodriguez Alarcon is a Colombian citizen who entered the United States without inspection in 2022. He was arrested by local law enforcement in January 2026 on a DUI charge and was transferred to Immigration and Customs Enforcement (ICE) custody. An immigration judge (IJ) denied his request for a bond hearing for lack of jurisdiction, finding that Alarcon was subject to mandatory detention under 8 U.S.C. § 1225(b) and the Board of Immigration Appeals' (BIA) decisions in *Matter of Q. Li*[1] and *Matter of Yajure Hurtado*.[2] He has been in ICE detention at the Nevada Southern Detention Center (NSDC) in Pahrump, Nevada, since his arrest. Alarcon seeks a writ of habeas corpus, alleging that the only statute that authorizes his detention is 8 U.S.C. § 1226(a), which provides noncitizens with the opportunity to seek bond, contest the denial of bond, and appeal the immigration court's bond determinations.

I grant Alarcon's petition, joining the hundreds of district courts and the Second Circuit in rejecting the government's § 1225(b)(2) arguments. Alarcon was arrested while present in the United States and is thus not an arriving alien seeking admission, so the mandatory detention

---

[1] *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025).

[2] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).

authorized by that statute does not apply to him. The only plausible authority for his pre-removal detention is § 1226(a), which allows noncitizens to seek bond. Alarcon was not given the opportunity to meaningfully seek that relief during the seven months that he has been detained, so I find that the appropriate remedy is to order his release.

## Background

Petitioner Gustavo Rodriguez Alarcon is a citizen of Colombia. He entered the United States without inspection in early 2022 by crossing the U.S.–Mexico border.[3] ICE agents arrested him in Arizona and released him on his own recognizance a month later with a notice to appear for removal proceedings.[4] In that notice, Alarcon was identified as a noncitizen "present in the United States who has not been admitted or paroled."[5] In 2024, he was granted authorization to work in the United States through January 2029.[6] He also filed a petition for asylum, which is still pending.[7]

Alarcon settled in Idaho and, on January 24, 2026, he was arrested by local law enforcement for driving under the influence.[8] He was taken into ICE custody and transferred to the NSDC before charges were filed for his local arrest.[9] In February 2026, an IJ denied his request for a custody redetermination, concluding that the immigration court lacked jurisdiction to consider the request because Alarcon is subject to mandatory detention under 8 U.S.C.

---

[3] ECF No. 10-2 at 3.
[4] ECF No. 1-2 at 10, 15.
[5] *Id.* at 10.
[6] *Id.* at 23.
[7] *Id.* at 4.
[8] *Id.*
[9] *Id.*

§ 1225(b)(2)(A) and the BIA's decision in *Matter of Q. Li*.[10]  A month later, the IJ denied another bond redetermination request, holding that "even if [Alarcon] is not subject to mandatory detention [under] *Matter of Q. Li*, the [c]ourt is currently bound by *Matter of Yajure Hurtado*."[11]  Alarcon filed a counseled habeas petition challenging the government's interpretation of § 1225(b) and contending that his detention is unlawful and unconstitutional.[12]

The government contends that Alarcon is not entitled to any bond hearing because his detention is governed by 8 U.S.C. § 1255(b)(2)(A) and *Matter of Yajure Hurtado* by virtue of him being an "applicant for admission" under the government's new statutory interpretation of the applicable provisions.[13]  Alarcon responds that the only authority that governs his detention is § 1226(a), which provides for bond-determination hearings.  He asserts that the government's misclassification violates the Immigration and Nationality Act and his procedural-due-process rights.

## Discussion

**A.      This court has jurisdiction over Alarcon's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[14]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is

---

[10] *Id.* at 27–28.

[11] ECF No. 10-3 at 2.

[12] ECF No. 1.

[13] ECF No. 10.  The government appears to concede that *Matter of Q. Li* does not apply to Alarcon, instead arguing only that the analysis in *Matter of Yajure Hurtado* applies.

[14] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[15]

**B.      Section 1225(b)(2)(A) does not apply to Alarcon because the government's interpretation of that provision is incorrect.**

The government contends that Alarcon is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  That provision requires mandatory detention "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."[16]  The government contends that, though Alarcon has been residing in the United States for about four years and was arrested within the interior of the United States, he remains an "applicant for admission" and is seeking admission, and thus falls under § 1225(b)(2)(A)'s mandatory-detention scheme.  It theorizes that § 1226(a), which grants noncitizen detainees the opportunity for release on bond, applies only to noncitizens who entered the United States legally but stay in the country illegally (i.e., arriving on a time-limited student visa, but staying past the visa's expiration).

This interpretation of the INA's pre-removal detention provisions upends decades of well-settled practice and has been the subject of hundreds of court cases and a circuit split.[17]  Before the switch, the government applied § 1226(a) to noncitizens already present within the United States who are inadmissible, while § 1225(b)(2)(A) was reserved for citizens seeking

---

[15] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[16] 8 U.S.C. § 1225(b)(2)(A).

[17] *Compare Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *with Cunha v. Freden*, 175 F.4th 61 (2d. Cir. 2026); *Lopez-Campos v. Bondi*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026).  The Ninth Circuit has at least one pending appeal confronting this issue. *See Rodriquez-Vasquez v. Bostock*, Case No. 25-6842 (9th Cir.).

admission after lawfully entering the country at a border after inspection and authorization. The government contends that its new interpretation is more consistent with the statute's text.

Considering the text, structure, and history of these provisions, I conclude that the government's new interpretation is incorrect. In the interest of judicial economy,[18] I incorporate by reference and adopt District Judge Richard F. Boulware II's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*,[19] finding that § 1225(b)(2)(A) cannot be read to encompass noncitizens who are already present in the United States, as opposed to those detained at its borders. And to the extent that the government relies on the Fifth and Eighth Circuits' opinions finding that the government's interpretations are correct, I incorporate by reference and adopt the conflicting findings the Second Circuit reached in *Cunha v. Freden*.[20] After careful review and consideration, I conclude that the reasoning in those opinions faithfully analyzes the statute and comes to the only plausible interpretation: § 1225(b)(2)(A) applies at the borders to noncitizens who seek admission to this country, and § 1226(a) applies to those noncitizens already present in the United States who are determined to be inadmissible and placed in removal proceedings. So, because it is undisputed that Alarcon has been residing in the United States since 2022 and is not "seeking admission" under § 1225(b)(2),[21] § 1226(a) governs his detention.

---

[18] *See, e.g.*, *Hernandez-Luna v. Noem*, 2025 WL 3102039, at *5 (D. Nev. Nov. 6, 2025) (noting that "much ink has been spilled on this [issue] in hundreds of orders issued in the last couple of months" and collecting cases).

[19] *Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026). Specifically, I incorporate sections IV and VI.C.1, 2, and 4s' findings and conclusions concerning the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and the prior agency practice.

[20] *Cunha*, 175 F.4th 61.

[21] Though Alarcon is seeking asylum, it is well-established that applying for asylum is not "seeking admission" under the INA. *See Sanchez v. Mayorkas*, 593 U.S. 409, 415–16 (2021) (noting that "lawful status and admission . . . are distinct concepts in immigration law" and acknowledging that "some forms of status (*e.g.*, asylum) do not require admission").

**C.     Alarcon's detention is governed by § 1226(a) and entitles him to certain due-process procedures that he has not received.**

> **1.     *Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.***

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States." The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[22] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[23]

The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[24] At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[25] The noncitizen may be represented by counsel and can submit evidence in his favor.[26] He may also appeal the decision to the BIA.[27] A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material

---

[22] 8 U.S.C. §§ 1226(a)(1)–(2).

[23] 8 C.F.R. § 236.1(c)(8).

[24] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[25] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[26] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[27] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

change in circumstances.[28]  He can appeal the IJ's decision of that redetermination hearing to the BIA too.

### 2.    *Noncitizen detainees are also entitled to due process of law in immigration proceedings.*

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[29]  But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[30]  The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[31] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[32]  Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[33]

The parties agree that Alarcon was not given any bond hearing at which the IJ determined whether he was a danger or flight risk because the IJ in his case believed that she lacked

---

[28] 8 C.F.R. § 1003.19(e).

[29] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[30] *Id.* at 1206.

[31] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[32] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[33] *Mathews*, 424 U.S. at 335 (cleaned up).

jurisdiction to consider that relief under § 1225(b)(2)(A). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."[34] Alarcon has been detained for almost seven months. But when evaluating Alarcon's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[35] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[36] Here, Alarcon has received no process to challenge his detention, and the government's position that he is subject to mandatory detention under § 1225(b)(2)(A) forecloses his ability to seek any meaningful opportunity to be heard on his request for release on bond. I thus find that the deprivation of Alarcon's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Alarcon's interest based on the government's reliance on § 1225(b)(2)(A)'s mandatory detention scheme. Alarcon has been detained for more than seven months, and throughout that time he had no opportunity to contest his detention. I find that Alarcon suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

It is undisputed that the government has a strong interest in enforcing immigration laws, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[37] But I cannot conclude that the

---

[34] *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (finding that the interest in not being detained "is the most elemental of liberty interests").

[35] *Rodriquez Diaz*, 53 F.4th at 1208.

[36] *Id.*

[37] *Id.*

8

government's interests outweigh the petitioner's in this case.  The parties' interests are not mutually exclusive: the government's interest in enforcing the immigration laws and protecting the public from dangerous noncitizens can still be served while offering due-process protections to the noncitizens in its custody.

Under these circumstances, I find that release is the appropriate remedy for the continuing due-process violations Alarcon has suffered.[38]  And because this finding affords Alarcon the relief he seeks, I do not reach the other claims in his amended petition.

### Conclusion

IT IS THEREFORE ORDERED that petitioner Gustavo Rodriguez Alarcon's petition for a writ of habeas corpus **[ECF No. 1] is GRANTED.  Petitioner Gustavo Rodriguez Alarcon must be released from detention within four days of this order.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Alarcon's release at least 24 hours before the release is set to occur, and

(2) within five days of this order, notice that Alarcon's release was effectuated.

IT IS FURTHER ORDERED that the respondents are enjoined from re-detaining Alarcon unless he is provided a pre-deprivation, individualized bond hearing under § 1226(a).

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

---

[38] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").

The Clerk of Court is directed to SEND a copy of this order to the Warden of the Nevada Southern Detention Center in Pahrump, Nevada and CLOSE THIS CASE

_____
U.S. District Judge Jennifer A. Dorsey
July 27, 2026

10